TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-08-00235-CV






In re Sara Steed, et al.






ORIGINAL PROCEEDING FROM SCHLEICHER COUNTY





M E M O R A N D U M O P I N I O NPER CURIAM

 This original mandamus proceeding involves the temporary custody of a number of
children who were removed from their homes on an emergency basis from the Yearning For Zion
ranch outside of Eldorado, Texas. (1) The ranch is associated with the Fundamentalist Church of Jesus
Christ of Latter-Day Saints (FLDS), and a number of families live there. Relators are thirty-eight
women who were living at the ranch and had children taken into custody on an emergency basis by
the Texas Department of Family and Protective Services based on allegations by the Department that
there was immediate danger to the physical health or safety of the children.

 Relators seek a writ of mandamus requiring the district court to vacate its temporary
orders (2) in which it named the Department the temporary sole managing conservator of their
children. (3) Relators complain that the Department failed to meet its burden under section 262.201
of the Texas Family Code to demonstrate (1) that there was a danger to the physical health or safety
of their children, (2) that there was an urgent need for protection of the children that required the
immediate removal of the children from their parents, or (3) that the Department made reasonable
efforts to eliminate or prevent the children's removal from their parents. Tex. Fam. Code Ann.
§ 262.201 (West Supp. 2007). Without such proof, Relators argue, the district court was required
to return the children to their parents and abused its discretion by failing to do so.

 Removing children from their homes and parents on an emergency basis before fully
litigating the issue of whether the parents should continue to have custody of the children is
an extreme measure. It is, unfortunately, sometimes necessary for the protection of the children
involved. However, it is a step that the legislature has provided may be taken only when the
circumstances indicate a danger to the physical health and welfare of the children and the need for
protection of the children is so urgent that immediate removal of the children from the home is
necessary. See id. (4)
 Section 262.201 further requires the Department, when it has taken children into
custody on an emergency basis, to make a showing of specific circumstances that justify keeping
the children in the Department's temporary custody pending full litigation of the question of
permanent custody. Unless there is sufficient evidence to demonstrate the existence of each of
the requirements of section 262.201(b), the court is required to return the children to the custody of
their parents. Tex. Fam. Code Ann. § 262.201(b).

 In this case, the Department relied on the following evidence with respect to
the children taken into custody from the Yearning For Zion ranch to satisfy the requirements of
section 262.201:



 Interviews with investigators revealed a pattern of girls reporting that "there
was no age too young for girls to be married";


 


 Twenty females living at the ranch had become pregnant between the ages of
thirteen and seventeen;


 


 Five of the twenty females identified as having become pregnant between the
ages of thirteen and seventeen are alleged to be minors, the other fifteen are
now adults;


 


 Of the five minors who became pregnant, four are seventeen and one is
sixteen, and all five are alleged to have become pregnant at the age of fifteen
or sixteen; (5)


 


 The Department's lead investigator was of the opinion that due to the
"pervasive belief system" of the FLDS, the male children are groomed to be
perpetrators of sexual abuse and the girls are raised to be victims of sexual
abuse;


 


 All 468 children (6) were removed from the ranch under the theory that the
ranch community was "essentially one household comprised of extended
family subgroups" with a single, common belief system and there was reason
to believe that a child had been sexually abused in the ranch "household"; and


 


 Department witnesses expressed the opinion that there is a "pervasive belief
system" among the residents of the ranch that it is acceptable for girls to
marry, engage in sex, and bear children as soon as they reach puberty, and
that this "pervasive belief system" poses a danger to the children.




 In addition, the record demonstrates the following facts, which are undisputed by
the Department:



 The only danger to the male children or the female children who had not
reached puberty identified by the Department was the Department's assertion
that the "pervasive belief system" of the FLDS community groomed the
males to be perpetrators of sexual abuse later in life and taught the girls to
submit to sexual abuse after reaching puberty;


 


 There was no evidence that the male children, or the female children who had
not reached puberty, were victims of sexual or other physical abuse or in
danger of being victims of sexual or other physical abuse;


 


 While there was evidence that twenty females had become pregnant between
the ages of thirteen and seventeen, there was no evidence regarding the
marital status of these girls when they became pregnant or the circumstances
under which they became pregnant other than the general allegation that the
girls were living in an FLDS community with a belief system that condoned
underage marriage and sex; (7)


 


 There was no evidence that any of the female children other than the five
identified as having become pregnant between the ages of fifteen and
seventeen were victims or potential victims of sexual or other physical abuse;


 


 With the exception of the five female children identified as having become
pregnant between the ages of fifteen and seventeen, there was no evidence of
any physical abuse or harm to any other child;


 


 The Relators have identified their children among the 468 taken into custody
by the Department, and none of the Relators' children are among the five the
Department has identified as being pregnant minors; and


 


 The Department conceded at the hearing that teenage pregnancy, by itself, is
not a reason to remove children from their home and parents, but took the
position that immediate removal was necessary in this case because "there is
a mindset that even the young girls report that they will marry at whatever
age, and that it's the highest blessing they can have to have children."




 The Department argues that the fact that there are five minor females living in the
ranch community who became pregnant at ages fifteen and sixteen together with the FLDS belief
system condoning underage marriage and pregnancy indicates that there is a danger to all of the
children that warrants their immediate removal from their homes and parents, and that the need for
protection of the children is urgent. (8) The Department also argues that the "household" to which the
children would be returned includes persons who have sexually abused another child, because the
entire Yearning For Zion ranch community is a "household." See id. § 262.201(d)(2).

 The Department failed to carry its burden with respect to the requirements of section
262.201(b). Pursuant to section 262.201(b)(1), the danger must be to the physical health or safety
of the child. The Department did not present any evidence of danger to the physical health or safety
of any male children or any female children who had not reached puberty. Nor did the Department
offer any evidence that any of Relators' pubescent female children were in physical danger other than
that those children live at the ranch among a group of people who have a "pervasive system of
belief" that condones polygamous marriage and underage females having children. (9) The existence
of the FLDS belief system as described by the Department's witnesses, by itself, does not put
children of FLDS parents in physical danger. It is the imposition of certain alleged tenets of that
system on specific individuals that may put them in physical danger. The Department failed to offer
any evidence that any of the pubescent female children of the Relators were in such physical danger. 
The record is silent as to whether the Relators or anyone in their households are likely to subject their
pubescent female children to underage marriage or sex. The record is also silent as to how many of
Relators' children are pubescent females and whether there is any risk to them other than that they
live in a community where there is a "pervasive belief system" that condones marriage and child-rearing as soon as females reach puberty.

 The Department also failed to establish that the need for protection of the Relators'
children was urgent and required immediate removal of the children. As previously noted, none of
the identified minors who are or have been pregnant are children of Relators. There is no evidence
that any of the five pregnant minors live in the same household as the Relators' children. (10) There
is no evidence that Relators have allowed or are going to allow any of their minor female children
to be subjected to any sexual or physical abuse. There is simply no evidence specific to Relators'
children at all except that they exist, they were taken into custody at the Yearning For Zion ranch,
and they are living with people who share a "pervasive belief system" that condones underage
marriage and underage pregnancy. Even if one views the FLDS belief system as creating a danger
of sexual abuse by grooming boys to be perpetrators of sexual abuse and raising girls to be victims
of sexual abuse as the Department contends, (11) there is no evidence that this danger is "immediate"
or "urgent" as contemplated by section 262.201 with respect to every child in the community. The
legislature has required that there be evidence to support a finding that there is a danger to the
physical health or safety of the children in question and that the need for protection is urgent
and warrants immediate removal. Id. § 262.201(b). Evidence that children raised in this particular
environment may someday have their physical health and safety threatened is not evidence that the
danger is imminent enough to warrant invoking the extreme measure of immediate removal prior
to full litigation of the issue as required by section 262.201.

 Finally, there was no evidence that the Department made reasonable efforts to
eliminate or prevent the removal of any of Relators' children. The evidence is that the Department
went to the Yearning For Zion ranch to investigate a distress call from a sixteen year-old girl. (12) After
interviewing a number of children, they concluded that there were five minors who were or had
been pregnant and that the belief system of the community allowed minor females to marry and
bear children. They then removed all of the children in the community (including infants) from
their homes and ultimately separated the children from their parents. This record does not reflect
any reasonable effort on the part of the Department to ascertain if some measure short of removal
and/or separation from parents would have eliminated the risk the Department perceived with respect
to any of the children of Relators.

 We find that the Department did not carry its burden of proof under section 262.201. 
The evidence adduced at the hearing held April 17-18, 2008, was legally and factually insufficient
to support the findings required by section 262.201 to maintain custody of Relators' children
with the Department. Consequently, the district court abused its discretion in failing to return the
Relators' children (13) to the Relators. The Relators' Petition for Writ of Mandamus is conditionally
granted. The district court is directed to vacate its temporary orders granting sole managing
conservatorship of the children of the Relators to the Department. The writ will issue only if the
district court fails to comply with this opinion.


Before Chief Justice Law, Justices Pemberton and Waldrop

Filed: May 22, 2008
1. The Department removed over 450 children from their homes on the Yearning For Zion
ranch over the course of three days. This proceeding does not involve parents of all of the children
removed.
2. The temporary orders reviewed in this proceeding were issued following the hearing held
April 17-18, 2008, and were signed the week of April 21, 2008.
3. Because temporary orders in a suit affecting a parent-child relationship are not subject
to interlocutory appeal under the family code, mandamus review is appropriate. Dancy v. Daggett,
815 S.W.2d 548, 549 (Tex. 1991); In re Vernor, 94 S.W.3d 201, 210 (Tex. App.--Austin 2002,
orig. proceeding).
4. Section 262.201 provides, in relevant part, as follows:


 (a) Unless the child has already been returned to the parent, managing conservator,
possessory conservator, guardian, caretaker, or custodian entitled to possession and
the temporary order, if any, has been dissolved, a full adversary hearing shall be held
not later than the 14th day after the date the child was taken into possession by the
governmental entity.



 (b) At the conclusion of the full adversary hearing, the court shall order the return of
the child to the parent, managing conservator, possessory conservator, guardian,
caretaker, or custodian entitled to possession unless the court finds sufficient
evidence to satisfy a person of ordinary prudence and caution that:


 (1) there was a danger to the physical health or safety of the child
which was caused by an act or failure to act of the person entitled to
possession and for the child to remain in the home is contrary to the
welfare of the child;


 (2) the urgent need for protection required the immediate removal of
the child and reasonable efforts, consistent with the circumstances
and providing for the safety of the child, were made to eliminate or
prevent the child's removal; and


 (3) reasonable efforts have been made to enable the child to return
home, but there is a substantial risk of a continuing danger if the child
is returned home.


 . . . .


 (d) In determining whether there is a continuing danger to the physical health or
safety of the child, the court may consider whether the household to which the child
would be returned includes a person who:


 (1) has abused or neglected another child in a manner that caused
serious injury to or the death of the other child; or


 (2) has sexually abused another child.


Tex. Fam. Code Ann. § 262.201 (West Supp. 2007).

5. One woman is alleged to have become pregnant at the age of thirteen. She is now twenty-two years old.
6. This number has fluctuated. It will likely continue to fluctuate somewhat as disputes
regarding the age of certain persons taken into custody are resolved.
7. Under Texas law, it is not sexual assault to have consensual sexual intercourse with
a minor spouse to whom one is legally married. Tex. Penal Code Ann. § 22.011(a), (c)(1), (2)
(West Supp. 2007). Texas law allows minors to marry--as young as age sixteen with parental
consent and younger than sixteen if pursuant to court order. Tex. Fam. Code Ann. § 2.101
(West 2006), §§ 2.102-.103 (West Supp. 2007). A person may not be legally married to more than
one person. Tex. Penal Code Ann. § 25.01 (West Supp. 2007).
8. The Department's position was stated succinctly by its lead investigator at the hearing. In
response to an inquiry as to why the infants needed to be removed from their mothers, the
investigator responded, "[W]hat I have found is that they're living under an umbrella of belief
that having children at a young age is a blessing therefore any child in that environment would not
be safe."
9. The Department's witnesses conceded that there are differences of opinion among the
FLDS community as to what is an appropriate age to marry, how many spouses to have, and when
to start having children--much as there are differences of opinion regarding the details of religious
doctrine among other religious groups.
10. The notion that the entire ranch community constitutes a "household" as contemplated by
section 262.201 and justifies removing all children from the ranch community if there even is one
incident of suspected child sexual abuse is contrary to the evidence. The Department's witnesses
acknowledged that the ranch community was divided into separate family groups and separate
households. While there was evidence that the living arrangements on the ranch are more communal
than most typical neighborhoods, the evidence was not legally or factually sufficient to support a
theory that the entire ranch community was a "household" under section 262.201.
11. The simple fact, conceded by the Department, that not all FLDS families are polygamous
or allow their female children to marry as minors demonstrates the danger of removing children from
their homes based on the broad-brush ascription of every aspect of a belief system to every person
living among followers of the belief system or professing to follow the belief system.
12. The authenticity of this call is in doubt. Department investigators did not locate the caller
on the ranch.
13. The children referred to are those children reflected on Appendix I to Relators' reply brief
and who are still in the custody of the Department.